IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:17-cr-00068-MO |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL EDWARD BOWMAN, | ) | April 11, 2018 |
| | ) | |
| Defendant. | ) | Portland, Oregon |
| _____ | ) | |

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

```
 1
 2                          APPEARANCES
 3

 4    FOR THE PLAINTIFF:       Ms. Donna Maddux
                               Ms. Rachel K. Sowray
 5                             United States Attorney's Office
                               1000 S.W. Third Avenue, Suite 600
 6                             Portland, OR 97204

 7

 8

 9    FOR THE DEFENDANT:       Mr. Matthew A. Schindler
                               Attorney at Law
10                             501 Fourth Street, Suite 324
                               Lake Oswego, OR 97034
11

12

13    COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                               United States District Courthouse
14                             1000 S.W. Third Ave., Room 301
                               Portland, OR  97204
15                             (503) 326-8188

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | (P R O C E E D I N G S) |
| 2 | (April 11, 2018) |
| 3 | MS. MADDUX:  Good morning, Your Honor.  Donna Maddux |
| 4 | appearing on behalf of the United States.  With me at the table |
| 5 | is my co-counsel, Rachel Sowray.  We're here in the matter of |
| 6 | United States versus Michael Bowman.  That's Case No. 17-cr-68. |
| 7 | Defendant is present.  He's out of custody.  With him today is |
| 8 | his attorney, Matthew Schindler. |
| 9 | We are scheduled today for oral argument on four |
| 10 | motions that were filed by defense counsel in this case.  Two |
| 11 | of those motions are motions to dismiss Count 1 of the |
| 12 | indictment.  A third is a motion to dismiss the entire |
| 13 | indictment, based on the Religious Freedom Restoration Act. |
| 14 | And finally the defendant has filed a motion to dismiss the |
| 15 | original indictment and to seal the docket entry. |
| 16 | The government is ready to proceed. |
| 17 | THE COURT:  Thank you. |
| 18 | Yes, sir? |
| 19 | MR. SCHINDLER:  Your Honor, I would simply confirm |
| 20 | what the government has to say about those various motions and |
| 21 | suggest maybe that we deal with arguments regarding the sealing |
| 22 | of the indictments first, then deal with statute of |
| 23 | limitations, joinder issues, substantive issues regarding the |
| 24 | indictment, and then finally deal with the RFRA and free |
| 25 | exercise for the arguments at the end. |

1    But I will take these things in whatever order the
2    Court believes would be appropriate under the circumstances.
3    THE COURT:  Thank you.
4    I have reviewed what's been submitted on the motion
5    to seal the indictment.  I believe it not proper in this case
6    to seal the indictment, so I deny that motion.
7    I've also reviewed the pleadings, the arguments that
8    have been made in writing on the motion to dismiss Count 1 for
9    improper joinder.  And I believe that one to be not well taken,
10   and I deny that motion.
11   That leaves the motion to dismiss Count 1 for statute
12   of limitations problems and the motion to dismiss the entire
13   indictment for First Amendment, RFRA issues.
14   So I'll take up the constitutional issue first and
15   give you my tentative views and then hear oral argument.
16   So I guess I'd start by saying that if -- if I were
17   writing on a blank slate in this case, then this would present
18   an interesting and challenging and difficult constitutional law
19   question to resolve in some ways.  But I'm not writing on a
20   blank slate.  There are -- there is a line of cases relevant to
21   the analysis that I have to take into account as a district
22   court.  It's not as full a slate, meaning that there's not
23   quite as much controlling authority in the government's favor
24   as the government has suggested.  I can't help but noting that
25   the government tells me that the cases prior to the Oregon case

1    of *Smith* are now applicable after *Burwell* by citing *Burwell*,

2    but specifically citing, without telling me so, the dissenting

3    opinion in *Burwell*.  So that doesn't quite get you there.

4         And the second argument is that I ought to rely on

5    the Ninth Circuit's opinion in *Jenkins*.  And that turns out to

6    be the Second Circuit's opinion in *Jenkins*.

7         So I still believe that to some degree the

8    progression of authority is a series of cases perhaps

9    culminating for our purposes in *Lee* that are called into

10   question, if not entirely overruled by *Oregon v. Smith*, and

11   then the impact of *Smith* on that line of cases is flip-flopped.

12   It's erased in *Burwell*.  So if you go back to something like

13   the earlier pre-*Smith* test, I still think that's probably

14   correct.

15        And then, of course, that requires a balancing look

16   at the seriousness, the compelling nature or not of the

17   government's interest, and the narrowness of the means used to

18   accomplish that interest.  And like a lot of questions in law,

19   that depends on what level of granular detail you use to

20   express the interest.

21        So here the parties have two different ways to

22   express the interest.  One is what is the government's interest

23   in funding abortion.  That's Mr. Schindler's expression of what

24   the government interest is that I should be taking a look at,

25   and then he notes that the federal government across time, at

1    least, if not simultaneously, speaks out of both sides of its

2    mouth on the question, and that undercuts the seriousness of

3    that government interest.

4         The United States suggests that in any challenge like

5    this that there could conceivably be many, there could be

6    conceivably thousands of ways to express an objection to the

7    revenue collection on religious freedom or other constitutional

8    grounds, but the real question is what is the government's

9    interest in the orderly collection of revenue.

10        And that seems to me, as an initial matter, the

11   correct way to state the government interest in play here,

12   although I don't think I'd come out differently even under

13   Mr. Schindler's expression of the government interest.  But if

14   it's the orderly collection of revenue, you know, you look at

15   the opposite side of the equation, is the government

16   accomplishing that interest in a narrow, accommodating way.

17        So here at least what Mr. Schindler has suggested,

18   for example, as just an example of a narrower way to accomplish

19   that interest and still engage in funding it is a sort of an

20   opt-out provision, where people can agree to pay in for this

21   purpose if they choose to.

22        Of course the United States suggests that Mr. Bowman

23   has no authority for that suggested approach, but that makes

24   sense.  It's a novel approach.  There wouldn't be any authority

25   for it.

1          So point number one, I guess, is that's a narrower
2    way to accomplish the defense stated interest, but doesn't
3    really help much in the government's view of the stated
4    interest.  That is, if the stated interest is the orderly sort
5    of neutral and tangle-free collection of revenue as much as
6    possible, without encumbering that collection with a lot of
7    add-ons, then the defense suggestion fails to allow the
8    government to accomplish that purpose.
9          So in total, then, I think the correct interest here
10   is the orderly collection of revenue, and I think as has been
11   suggested but not held by important Supreme Court cases on
12   this -- in this arena, that that can't be accomplished by
13   opening the door to an argument that has the potential to go on
14   and on in objecting to many large and small ways in which the
15   government spends money.
16         I think it's correct to note, as cases have noted,
17   that if the argument is that I object to the way the government
18   is spending money on this issue, that because the government
19   spends money across so many different things, that on almost
20   any issue where that objection could be raised, coming out the
21   other way would pose the possibility someone would have its
22   opposite.  I object, you know, to spending money on the war,
23   and someone else could say, I object to not spending money on
24   liberating oppressed countries, you know, however you want to
25   phrase it.  It becomes unworkable.

1          It's not a new idea, by the way, to object to -- to

2    pose objections to government revenue collection and spending

3    it on certain causes.  I mean, the tradition of that sort of

4    objection is quite old in this country, and articulated

5    probably best by Henry David Thoreau in his essay on civil

6    disobedience.  But the upshot of that essay was you make your

7    objection and you pay your price.  You work for legislative

8    change, you work for policy change, but you can't reasonably

9    expect to be accommodated in that way on an argument that has

10   endless applications.

11         So my tentative views are that the motion to dismiss

12   the indictment under this body of law encapsulated in the First

13   Amendment and RFRA, as amended by RLUIPA and *Burwell*, ought to

14   be denied, but I'll hear you further, Mr. Schindler, if you

15   have anything further to add that you didn't put in writing.

16         MR. SCHINDLER:  If I might just have a moment.

17         (There is a pause in the proceedings.)

18         MR. SCHINDLER:  Your Honor, thank you for providing

19   me the Court's views on these issues at the outset, because I

20   think they're significant, challenging, and obviously impactful

21   on Mr. Bowman's life.

22         I understand that the Court believes that the

23   indictment shouldn't be sealed; that it's not appropriate.  I

24   would like to just speak to that briefly because I just -- I'm

25   not grasping entirely why it wouldn't be appropriate to dismiss

1  entirely an indictment that the government has superseded and

2  acknowledged wasn't properly brought in the first place.

3          THE COURT:  Are you talking about dismissing the

4  current iteration of the indictment or the former?

5          MR. SCHINDLER:  The former.

6          THE COURT:  Do you object to that in any way?

7          MS. MADDUX:  No, Your Honor.  We state in our motion

8  we do not.

9          MR. SCHINDLER:  So that indictment will be dismissed,

10 and I understand the Court's view on the current indictment.

11         I also acknowledge that there is not a direct case,

12 law or statute that supports the defendant's request for an

13 indictment, but I would say -- and I'm prepared to present

14 Mr. Bowman's testimony on this issue -- that it's been

15 extraordinarily impactful.  At least three different employers

16 have told him that the existence of the indictment itself is

17 the reason for denying him employment.  And I understand that's

18 not a decision that you control or that the government

19 controls, but I fail to see what the broad public interest is

20 in an indictment alleging tax evasion as an individual by

21 Mr. Bowman that goes back, you know, nearly 20 years.

22         And so I think there is a basis, certainly, within

23 the context of the Court's supervisory powers to seal an

24 indictment under these circumstances, and so I would simply

25 present those issues to the Court.

With respect to the First Amendment and the RFRA issues, I think that what *Hobby Lobby* represented was a reset, and it's not clear to me at all from reading *Hobby Lobby* that what Congress intended with the RFRA was simply to just return to whatever the Supreme Court decisions were pre-*Smith*.

You know, what Alito says in *Hobby Lobby*, Congress intended greater protections for religious freedoms and religious rights than any cases had established in the past.  I mean, that's the way that I read his opinion in that case.  And I think if that's the case, then a line of cases suggesting something different isn't particularly helpful to the analysis in this particular case.

And I understand that, you know, it's a simple issue to express an interest as broadly as possible -- we have an interest in the uniform collection of taxes -- but at the same time, Your Honor, there fundamentally has to be a point at which that no longer enjoys deference, that no longer enjoys a simple presumption that it's appropriate.

And so you're talking about -- this isn't -- I mean, repeatedly I've had the government say, and now the Court has said, oh, there's thousands of objections that people could make.  I don't see that.  I don't see the thousands of objections that people could legitimately make about government expenditures.  Expenditures for defense are specifically provided for in the Constitution.  That's a giant chunk of what

1    our federal government does and is supposed to do, but our
2    federal government itself says we have no interest in
3    eliminating unborn children.  So what right does the government
4    have to supersede Mr. Bowman's fundamental rights to preserve
5    his own conscience, to protect himself?
6              And there's another element here that I think has
7    been lost, Your Honor, and I think there was an emphasis.  The
8    RFRA doesn't just contemplate a result.  It contemplates a
9    process.  It contemplates an opportunity to have a discussion
10   with people about whether an accommodation is realistic.
11             I mean, so there's a fundamental element, a
12   fundamental problem with the notion that it just doesn't have
13   to accommodate him because it said so.  I mean, we continually
14   assume that there's no way the government could do this, and
15   the Supreme Court says there's no way the government could do
16   this.  Really?  I mean, that's exactly the way my bar dues in
17   California are collected.  The California State Bar was sued
18   under antitrust laws, they basically became a voluntary
19   organization, and now when I get my bill from them, it says:
20   Do you want to donate to a public interest law project?  Do you
21   want to give three more dollars to support indigent defense?
22             So the notion that the United States Government isn't
23   capable of accommodating a core religious value, a core element
24   of the religious values of millions and millions of Americans
25   seems to me like we're -- you know, where is the evidence?

1   Where is the evidence of that?  The government says so.  But

2   I -- we're talking about $500 million of trillions.  We're

3   talking about a small expenditure.

4        And, again, I don't -- you know, I don't see where

5   this wave of people being able to come in and object to the

6   government on unrelated grounds has any even relevance under

7   the RFRA as it's been decided now.  I mean, the very first

8   thing is you have to have a discussion about accommodation.

9   You can't just assume that accommodation can't be done.  There

10  has to be proof.  The government has to put someone on from the

11  IRS that says, you know what?  We've thought about this, we've

12  considered it, we've looked into it and we've consulted with

13  people and it just won't work.

14       And so, you know, to me there's an element of process

15  in this that Mr. Bowman has fundamentally not enjoyed.  When he

16  tried to discuss these issues with individuals and the IRS,

17  they laughed in his face and then took him to jail.

18       And so, you know, I think it's difficult to accept

19  that the line of cases that say you can't come in here as a

20  conscientious objector to war, you can't come in here as a

21  conscientious objector to Social Security are inapposite, are

22  different, represent something that doesn't have continuing

23  viability under the RFRA.

24       The people in Congress may not be geniuses, but

25  they're not morons.  They knew what Title 26 was when they

1    wrote the RFRA.  They certainly could have said in there,

2    listen, this doesn't apply to Title 26 or this doesn't apply to

3    what the government spends or anything else.

4            But those words are there and they say what they say,

5    and so I don't -- it's not just a result that's important about

6    the RFRA.  It's a process.  And what I think is before you haul

7    a man into federal court and threaten him with prison, that at

8    least someone should have a discussion with him about, hey,

9    listen, you know, these are important values and we understand

10   them and respect them, but we can't possibly do this.

11           And I just don't buy that there are thousands and

12   thousands and thousands of objections and this would open the

13   door and make it impossible for the government to ever collect

14   taxes.  I just think that's just an assumption and not a fact.

15   And I think that under our system, with this law, a process has

16   to take place before a conclusion is reached, and I think

17   that's part of where the failure has come in this particular

18   case.

19           THE COURT:  Thank you.  I appreciate it.

20           MR. SCHINDLER:  So I would also like to speak, when

21   appropriate, to the statute of limitations issue.

22           THE COURT:  You'll get your chance.

23           MR. SCHINDLER:  Okay.

24           THE COURT:  (To Ms. Maddux) So I don't need to hear

25   from you.  Thank you.

1          I affirm what I just said was a tentative ruling.  I

2    appreciate Mr. Schindler's arguments.  They're embodied in what

3    he submitted to the Court in writing, so I've tried to take

4    them into account.  And so that is my holding then on the

5    motion to dismiss the indictment in its entirety.

6          The next issue is the motion to dismiss Count 1 for

7    statute of limitations grounds.  And so Count 1 spans a

8    significant period of time, and the way -- the only way really

9    that it evades the statute of limitations problem, if it does,

10   raised by Mr. Schindler under Section 7201 is if -- I think

11   it's like January 2012 to fall of 2014, in a series of cashing

12   of mostly paychecks instead of depositing them, or at least

13   initially depositing them but taking the cash out instead of

14   leaving it with the bank, if that amounts to evasion.

15         So I'm going to use a shorthand to talk about that in

16   expressing my tentative views.  I'll call taking your checks

17   and depositing them in your bank account and leaving them

18   there -- other than for just the normal pattern of having some

19   in savings and having some in checking and spending them on

20   your normal daily spending or monthly spending -- I'm going to

21   call that depositing checks.

22         And taking your checks and cashing them, which

23   technically is momentarily depositing them and then pulling

24   cash out, and pulling out most of the money so that little of

25   what you got in the checks remains in the account, I'm going to

1    call that cashing the checks.  That's what I mean as a way of

2    shorthand.

3         So it has to be, for Count 1 to survive statute of

4    limitations, that Mr. Bowman's cashing of these checks instead

5    of depositing them represents some sort of evasion.  And that's

6    a concept that has been defined by law also to fundamentally

7    mean some sort of concealment or misleading.

8         So we know -- if you can think of this as two ends of

9    a continuum, we know sort of what's clearly concealment and

10   evasion and misleading, and that's, you know, for example,

11   taking your checks and coming up with a phony name and

12   depositing them under a phony name or hiding them under a

13   different name offshore, maybe even taking the money and buying

14   assets with it and then hiding the assets.  You buy a bunch of

15   gold or art somewhere and then you locate it at secret

16   locations all over.  That's concealment.  And the false name is

17   misleading, and it's concealment or misleading that is the sine

18   qua non of evasion.

19        And I think I know what's not evasion.  I think

20   somebody who just makes the decision -- let's say from the

21   outset of their financial life, they make a decision I'm just

22   not going to use banks.  Maybe they open an account, but they

23   don't keep a lot of cash in there.  That's not concealment.

24        And even the decision later on, in my view, to change

25   that pattern -- someone cooks along through life with what you

1    might think of as the more typical banking practice, and then

2    somewhere along the way, they change their mind and they become

3    preppers, or some other reason, and they decide, well, I'm not

4    going to rely on banks so much and I'm going to keep most of it

5    in cash, and that's the only reason they're doing it.  That's

6    not evasion.  Nor is, for that matter, openly spending the

7    money.  While it may obstruct collection efforts if you cash

8    your checks -- if you deposit your checks, put $50,000 in the

9    bank through checks, and then you go out and spend most of it,

10   that may create other problems, it may even violate other laws,

11   but it's not a violation of Section 7201.  It's not evasion to

12   spend the money in a way that makes it less available to the

13   collection efforts of the IRS if it's done openly.

14           So, in my view here, you need something more than

15   just the assertion that what happened here was this person

16   cashed his checks under his true name, through his own bank, in

17   his own account, the inference being that that will make it

18   harder than the simple measure of just seizing his bank account

19   for the federal IRS to get the money some day if it earns the

20   right to do so.

21           And it's also my view that switching your methods or

22   doing other things that might be open and non-fraudulent, not

23   misleading or concealing but just make it more difficult to

24   collect aren't evasion; that you need something more than a

25   switch.  You have to be -- you might think of it as a switch

1  plus one other thing.

2          That might be timing.  You might have always

3  deposited your checks, and then the taxing authority increases

4  its efforts or begins or increases its efforts to come after

5  you, and so you then start cashing your checks instead.

6          And that's the United States' argument here.  I think

7  they at times seem to make the argument that just cashing your

8  checks, if you used to deposit them, is evasion.  And in my

9  view, that's clearly not the case, let alone cashing your

10 checks as opposed to depositing them just as your normal

11 pattern.  Neither of those are evasion.

12          But its real argument is that the taxing authorities

13 came after this man and so he switched his methods, and I can

14 take in the switch plus the timing.  The timing is the plus one

15 above just switching from depositing to cashing, and the timing

16 tells me that it's evasion.

17          That might work.  There is some plus one necessary,

18 and it might work to call it timing.  There has to be some

19 evidence that makes it real evasion as opposed to just cashing.

20          And the problem raised in this case is that it's the

21 wrong taxing authority.  As far as I can tell from this record,

22 the federal IRS really didn't change its conduct towards this

23 defendant in any way that can lead to the rational inference

24 that, step one, federal taxing authority makes a new move; step

25 two, defendant responds by starting to cash his checks instead

1    of deposit them, and therefore infer conclusion that he did it

2    to evade.

3         Instead, it's the state taxing authorities that are

4    temporally linked to the change in his financial behavior, and

5    in my view that doesn't work.  Therefore, I'm tentatively

6    inclined to dismiss the indictment -- excuse me, Count 1 of the

7    indictment on statute of limitations grounds.

8         So, Ms. Maddux, since this tentative conclusion puts

9    the ball in your court, I'll start with you.

10        MS. MADDUX:  And, Your Honor, Ms. Sowray is going to

11   address this particular issue.

12        THE COURT:  Ms. Sowray, go ahead.

13        MS. SOWRAY:  Thank you, Your Honor.

14        The government will present at trial a lot of

15   evidence concerning how Mr. Bowman evaded these taxes.  The

16   evidence will include not just the evidence of what the bank

17   accounts were looking like --

18        THE COURT:  Well, let me stop you there.

19        So the motion isn't to direct a verdict at trial; the

20   motion is to dismiss an indictment.  So you've got to tell me

21   what's in the indictment that defeats the motion.

22        MS. SOWRAY:  The IRS was making specific -- was

23   sending specific notices to Mr. Bowman at the same time that

24   the Oregon Department of Revenue was, so he was being put on

25   notice by both authorities that this is what was occurring.

1        THE COURT:  Sure.  But the IRS had been doing that

2   for many years, right?

3        MS. SOWRAY:  Correct.  Both had been doing so for

4   many years.

5        THE COURT:  So what -- just before the time that

6   Mr. Bowman changed his financial behavior, what had changed in

7   the IRS's behavior from its prior multiyear practice with this

8   man?

9        MS. SOWRAY:  The IRS had sent a notice just about two

10  months prior to the sweep in January, per their 45-day notice,

11  to Mr. Bowman.  So there was reason to believe that he

12  understood this to be the authority of the IRS doing it.

13        Furthermore, the fact that one authority did it and

14  they both were saying they were going to do it, goes to looking

15  at what his understanding was.  There isn't evidence saying he

16  only understood that the Department of Revenue of the State of

17  Oregon was doing this, but that there is reason to show that he

18  understood that both were looking to do this, now they were,

19  and now he was going to take action to evade both.

20        THE COURT:  Where in the indictment does it say that

21  he -- do you aver that that was his mental understanding of

22  what was going on?

23        MS. SOWRAY:  If I can just have a moment, Your Honor.

24        (There is a pause in the proceedings.)

25        MS. SOWRAY:  Your Honor, we say at the end of both B

1    and C --

2              THE COURT:  You're talking about paragraph 17?

3              MS. SOWRAY:  Yes, Your Honor.  I apologize.

4    Seventeen, paragraphs B and C, that his intent in doing what he

5    was doing to evade these, in the way he was depositing checks,

6    was for the purpose to thwart the tax collection efforts of the

7    IRS.

8              And before that, when we're looking at the preceding

9    paragraphs, in paragraph 9 we talk specifically about the IRS

10   sending notices to the defendant concerning this, as well as

11   the actions that he took in 10 and 11.

12             THE COURT:  Well, that's across a long period of

13   time, right?

14             MS. SOWRAY:  It is across a long period of time.

15             THE COURT:  Notices of default or whatever else you

16   were sending?

17             MS. SOWRAY:  Your Honor, I agree that it is across a

18   good amount of time.

19             THE COURT:  I guess my problem is if for years -- for

20   several years, let's say in 2010 you send someone a notice --

21   you, the federal IRS send someone a notice -- then conduct that

22   occurs in 2014, for example, 2013, that would be a tough sell,

23   wouldn't it, to say that was in response to the letter you sent

24   in 2009 or 2010?  I mean, if somebody is going to evade you by

25   concealing their assets, waiting three or four years is a tough

1    sell, isn't it?

2          MS. SOWRAY:  I can understand the Court's position on

3    that.  However, I would point out that we're saying that

4    notices were being sent over quite a long period of time.  When

5    something was done by one of the collection agencies, that --

6          THE COURT:  You say "one of the collection agencies,"

7    like you're partners, but it is possible, isn't it, for someone

8    to evade state tax collection and not evade federal tax

9    collection?

10         MS. SOWRAY:  It is possible under some sets of

11   circumstances.

12         THE COURT:  You have to show evasion of federal tax

13   collection here in this case, obviously, under Count 1?

14         MS. SOWRAY:  Yes, Your Honor.  And we believe that

15   that is -- that those facts are available, will be available in

16   the trial; that when we're looking at --

17         THE COURT:  Well, sure, but we aren't talking about

18   that.  That will just help you if I dismiss without prejudice.

19   It doesn't help you -- you can't say there are facts not in the

20   indictment that beat a motion to dismiss the indictment.  That

21   just doesn't work.

22         MS. SOWRAY:  Correct, Your Honor.

23         THE COURT:  What you have in the indictment is you

24   sent him notices for quite a period of time, and then you state

25   something about his intent in changing his financial behavior,

1  right?

2          MS. SOWRAY:  Yes, Your Honor.

3          THE COURT:  All right.

4          MS. SOWRAY:  The government believes that there is

5  enough there to show what the defendant would have to be --

6          THE COURT:  Well, what did he misrepresent?

7          MS. SOWRAY:  I'm sorry?

8          THE COURT:  In what way did he misrepresent anything

9  to the IRS?  If evasion under persuasive authority is

10  fundamentally some sort of misrepresentation or concealment,

11  then did he ever misrepresent to the IRS anything about what he

12  was doing with his own checks?

13          MS. SOWRAY:  No.  He was generally pretty clear with

14  the IRS what he was doing and why.

15          THE COURT:  Did he ever conceal what he was doing?

16          MS. SOWRAY:  I suppose that depends on how -- if you

17  look at concealment as he was putting the checks in and taking

18  them out so they weren't accessible, yes, Your Honor.

19          THE COURT:  Right.  But, I mean, that would be

20  true -- then concealment would be anybody who just cashes their

21  checks.

22          MS. SOWRAY:  But, Your Honor, the difference is that

23  he's doing it for the purpose of thwarting the IRS collection,

24  based on his knowledge of what's going --

25          THE COURT:  Why he's doing it is something you have

1  to have a hook to show.  You can't show it just by cashing

2  checks, right?

3          MS. SOWRAY:  Correct, Your Honor.

4          THE COURT:  If you had a tax issue collection with

5  someone, and then once you went to enforce it, get the money

6  from them, you learned, wait a minute, this person never

7  deposits their checks, they just cash them, oh, my gosh, that's

8  a lot harder to collect.  Would that be evasion or just harder

9  to collect?

10         MS. SOWRAY:  It would depend on what their purpose

11 was.

12         THE COURT:  Which would be shown by something more

13 than just merely cashing checks, right?  You would need

14 something more.

15         MS. SOWRAY:  Yes.  And here we have that he was given

16 notice on several occasions, made it clear he did not wish to

17 pay taxes for certain reasons, and then once the actual taking

18 of the money was done by the government, he changed --

19         THE COURT:  Which government?

20         MS. SOWRAY:  Well, I understand the Court believes

21 because it was --

22         THE COURT:  It's two governments, right?

23         MS. SOWRAY:  Yes, Your Honor.

24         But I believe what was happening here is that the

25 Court is saying that just because the Department of Revenue was

1  the one to take the money, we must therefore say that that is

2  the only reason why Mr. Bowman changed his behavior, and I

3  don't believe that that is the correct outcome of when we look

4  at all of the information that we have here, Your Honor.

5          THE COURT:  I understand that argument.  Thank you

6  very much.

7          MS. SOWRAY:  Thank you, Your Honor.

8          THE COURT:  I understand the argument, and I think

9  it's a serious argument, and it represents a distinction that I

10  think the governing federal statute here makes or allows, at

11  least, and that is that not everything that qualifies as making

12  the collection efforts of the United States more difficult

13  qualifies per se as evasion.

14          So, for example, as I said, someone could say, oh,

15  they're coming down my street.  I'm going to start, you know,

16  buying drinks at the bar and rewarding my friends for

17  everything I can think of.  And if that's done through lying or

18  misleading or concealment, then yes.  But if it just makes

19  collection more difficult, then as I said, there are other

20  problems that creates for the person who does that, but it's

21  not evasion.

22          More particularly for our case, cashing checks by

23  itself is not evasion.  It's got to be, in this case, totally

24  related to the timing.  Starting to cash checks by itself isn't

25  evasion, but it can be if it happens, and a very rational

1   inference to make in the light most favorable here to the

2   United States, a rational inference to make is, well, it's the

3   taxing authorities stepped up or brand-new enforcement efforts

4   that triggered cashing instead of depositing.  And as I said,

5   you've got not just the fundamentally innocuous decision to

6   cash checks on your hands, you've got cashing checks as a means

7   of evasion.

8          But since that's also a little tricky and partakes of

9   this same distinction between conduct that simply makes

10  collection more difficult and conduct that is evasion, I'm

11  unwilling to infer it across sovereigns, and so the only

12  conduct that could reasonably be inferred to give rise to the

13  altered financial behavior of Mr. Bowman here is the stepped-up

14  enforcement efforts of the State of Oregon, and I don't think

15  the indictment can be read fairly to -- other than in a way

16  that's simply conclusory, and therefore invalid under governing

17  law, I don't think the indictment can fairly be read to suggest

18  in any way that the change in financial behavior is triggered

19  by any event done, any new or increased enforcement efforts by

20  the federal government.

21         And since it's the federal government that the Count

22  1 of the indictment charges him with evading, then I think the

23  indictment fails to allege or support a critical element of

24  Count 1.

25         So I grant the motion to dismiss it.  I grant it

1    without prejudice to attempt to alter the indictment, without

2    ruling on whether that renewed attempt to do so runs afoul of

3    statute of limitations or otherwise.  I just don't dismiss it

4    with prejudice.

5           And you've represented that you think you have facts

6    that would show that, sir.  So if you're otherwise free to do

7    so and don't run afoul of other legal issues, then you're free

8    to try to do so.

9           I believe that concludes the legal questions before

10   me this morning.

11          Anything further from the United States?

12          MS. SOWRAY:  No, thank you, Your Honor.

13          THE COURT:  For the defense?

14          MR. SCHINDLER:  No.  Thank you, Your Honor.

15          THE COURT:  We'll be in recess.

16          MR. SCHINDLER:  Thank you.

17          THE CLERK:  This court is adjourned.

18          (Proceedings concluded.)

19

20

21

22

23

24

25

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *April 12, 2018*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR         DATE
Official Court Reporter